IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Anthony Boyd Maybin, #185886, ) | |
| ) | Civil Action No. 3:07-1578-GRA-JRM |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Warden Bazzle, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner, Anthony Boyd Maybin ("Maybin"), is an inmate at the South Carolina Department of Corrections serving a sentence of thirty years (first degree burglary), twenty years, concurrent (kidnapping, two counts), twenty years, consecutive (assault and batter with intent to kill), twenty years, concurrent (attempted armed robbery, two counts), and five years, concurrent (possession of a weapon during a crime of violence). He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of the Constitution of the United States. The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on August 3, 2007. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on August 8, 2007, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Maybin filed an unsigned motion for summary judgment on October 12, 2007. Respondent filed a reply on October 22, 2007.

**Procedural History**

Maybin's convictions result from events that occurred on October 15, 1999 in Newberry County. On that night, Maybin broke into the residence of Gary Burge and Theresa Plows, robbed them, kidnapped them, and stabbed them with a knife. Maybin pled guilty on April 24, 2000. He was represented by William Pyatt. A timely appeal was filed by way of an Anders[1] brief through the South Carolina Office of Appellate Defense raising the following issue:

> The lower court erred in accepting appellant's guilty pleas without advising him of the sentencing consequences thereof.

(Res. Mem., Ex. 2). Maybin filed a pro se brief (Res. Mem., Ex. 3). The appeal was dismissed on March 28, 2002 by the South Carolina Court of Appeals. (Res. Mem., Ex. 4). The Remittitur was returned on May 2, 2002 (Res. Mem., Ex. 5).

Maybin filed an application for post-conviction relief ("PCR") on May 20, 2002. (App. 40). An evidentiary hearing at which Maybin appeared and testified was held on October 8, 2003. He was represented by Rodney W. Richey. (App. 51). The PCR court filed an order dismissing the application filed December 11, 2003. (App 79). A Johnson[2] petition for writ of certiorari was filed by the South Carolina Office of Appellate Defense raising the following issue:

> Whether petitioner's guilty plea complied with the mandates set forth in Boykin v. Alabama?

Maybin filed a pro se brief (Res. Mem., Ex. 8). The petition for writ of certiorari was denied by order of the South Carolina Court of Appeals dated July 10, 2006. (Res. Mem., Ex. 9). The Remittitur was returned on July 28, 2006. (Res. Mem., Ex. 10).

---

[1] Anders v. California, 386 U.S. 738 (1967).

[2] Johnson v. State, 294 S.C. 310, 364 S.E.2d 2001 (1988).

**Grounds for Relief**

In his present petition, Maybin asserts that he is entitled to a writ of habeas corpus on the following grounds.

1. Due Process of law required before a guilty Pleas (Under Due Process Clause). Once a person state [sic] an agreement with you and another lawyer that has dealing with you through another case and both lawyer are working together and one came to an agreement with the solicitor and I agree to it then it should be dealth [sic] truthfully. He stated at the PCR hearing and I showed letter at hearing as well.

2. Ineffective Assistance of Counsel. My lawyer told me one thing and did another thing. He put forth no hope in my case and he revoke our trust in my case.

3. Voluntariness of the Confession. The act of cofession [sic] was done in an agreement between the arresting officer toward leanness. It was done off tape before the confession was giving [sic]. Leanness was giving in my behalf through solicitor offices by help of officer but was revoke through my lawyer who thought that he could received some money through my case.

**Discussion**

Since Maybin filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  See Williams v. Taylor, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20.  Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.

    1.    Plea Negotiations

In addition to the charges in Newberry County, Maybin was facing a similar charge in Lexington County.  He was represented by Hervery Young in Lexington County.  Young attempted to negotiate a universal plea to all charges to be handled in one county.  Young wrote Maybin concerning his efforts and told him to anticipate a sentencing recommendation of 15 to 20 years.  The letter was introduced into evidence at the PCR hearing. (App. 56).  However, the Solicitor would not agree to transfer the cases so this arrangement did not materialize.  Maybin's Newberry lawyer negotiated a recommendation for 20 years with respect to the Newberry charges.

4

Maybin appears to assert in his first two grounds for relief that he was denied due process because his plea agreement was not honored and Pyatt was ineffective in not bringing the plea agreement to the court's attention at sentencing.

At the PCR hearing, Maybin testified that he reached a plea agreement of 20 years, but that it was "revoked" (App. 55). On the other hand, Pyatt testified that Maybin rejected the recommendation and decided to plead "straight up" and take his chances with leniency from the court. The PCR court found as fact:

> Prior to the guilty plea, trial counsel conferred with the attorney representing the Applicant on unrelated charges pending in Lexington County. The discussion was memorialized in a letter expressing what that attorney would attempt to negotiate with the Lexington County Solicitor's Office. This court also finds that counsel entered into plea negotiations and was successful in receiving an offer from State respecting the Newberry County charges. However, attempts to transfer the Newberry charges to Lexington were unsuccessful. Counsel testified that he explained to Applicant the State's offer, available options, and the consequences depending on the option the Applicant elected to pursue. Contrary to the Applicant's claim, trial counsel did not provide erroneous advice respecting the plea negotiations and did not cause the plea offer to be rescinded by the State. Rather, counsel communicated the offer to the Applicant and the Applicant rejected the offer on more than one occasion. Instead, the Applicant elected to enter a guilty plea without an offer from the State with the hope the trial judge would be more lenient in sentencing than the State's plea recommendation.

(App. 82).

Plea bargaining is an accepted practice in all courts. Blackledge v. Allison, 431 U.S. 63 (1977). Principles of contract and agency are applied where the content of the plea agreement becomes an issue. United States v. McIntosh, 612 F.2d 835 (4th Cir. 1979). A prosecutor's breach of a plea agreement may render the guilty plea involuntary. Santobello v. New York, 404 U.S. 258 (1971). The factual findings of the PCR Court are "presumed to be correct." (28 U.S.C. § 2254

(e)(1)).  A habeas petitioner may rebut this presumption by "clear and convincing evidence." (Id.) Maybin has not done so.

The factual finding of the PCR court defeats Maybin's claims concerning plea negotiations. There was no due process violation because Maybin elected to reject the plea bargain.  Further, as the PCR court found, Pyatt was not ineffective because, at the time of the plea and sentencing, there was no agreement.

2.     Confession

Maybin gave a statement to law enforcement officials upon his arrest. He appears to assert that he was promised leniency from the officer to whom the statement was given.  This claim was addressed as one of ineffective assistance of counsel by the PCR court:

> The Court finds that trial counsel conducted a thorough investigation of the facts, including the possibility of challenging Applicant's confession, and discussed the results of the investigation with the Applicant.  It was counsel's opinion that there was no valid challenge he could present to the confession.  Trial counsel sufficiently conferred with the Applicant during which he discussed the specifics of the pending charges, the evidence the State planned to present against the Applicant, admissibility of the confession, the applicable penalties, and Applicant's constitutional rights.

(App. 81-82).

The Fifth Amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself." In Miranda, the Supreme Court recognized that the atmosphere of custodial interrogation in and of itself is inherently coercive. Miranda, 384 U.S. at 458. In order to ensure the Fifth Amendment privilege against self-incrimination is not undermined in such a situation, the Supreme Court established certain procedural safeguards for counteracting the compelling pressures inherent in the custodial interrogation setting. See id. at 444. Specifically, Miranda requires that prior to any questioning in such a setting, the person being interrogated must

be warned he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. See id. "The Court's fundamental aim in designing the Miranda warnings was 'to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." ' Colorado v. Spring, 479 U.S. 564, 572 (1987) (quoting Miranda, 384 U.S. at 469). The Supreme Court has held that "Miranda announced a constitutional rule that Congress may not supersede legislatively." Dickerson v. United States, 530 U.S. 428, 444 (2000). Following the rule of stare decisis, the Court further declined to overrule the Miranda decision, which "has become embedded in the routine police practice to the point where the warnings have become part of our national culture." Id.

To ensure that law enforcement officials comply with Miranda's requirements, the Supreme Court established an exclusionary rule, holding that statements obtained in violation of Miranda must be excluded from the prosecution's case-in-chief even if the statements are otherwise voluntary within the meaning of the Fifth Amendment. Oregon v. Elstad, 470 U.S. 298, 307 (1985). The failure to administer Miranda warnings creates an irrebuttable presumption of compulsion, requiring the suppression of the accused's statements for purposes of the prosecution's case-in-chief. Id. at 306-07 and n. 1.

A suspect may waive his Miranda rights after receiving the required warnings and agree to answer questions or make a statement during custodial interrogation, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444; see also Spring, 479 U.S. at 572; Moran v. Burbine, 475 U.S. 412, 421 (1986). In such a case, the suspect's statements are not "compelled" within the meaning of the Fifth Amendment and may be introduced against him in the

7

prosecution's case-in-chief without implicating constitutional concerns. See Spring, 479 U.S. at 573. The question whether an accused has validly waived his Miranda rights involves two distinct inquiries: (1) whether the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception;" and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, 475 U.S. at 421; see also Spring, 479 U.S. at 573. "Only if the 'totality of the circumstances surrounding the interrogation,' " including the background, experience, and conduct of the accused, "reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran, 475 U.S. at 421 (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)); see also North Carolina v. Butler, 441 U.S. 369, 374-75 (1979) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

In determining whether a valid waiver has been made, the Court need not inquire into the state of mind of the police, which is "irrelevant to the question of the intelligence and voluntariness of the suspect's election to abandon his rights." See Moran, 475 U.S. at 423. In addition, the "Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege," such as that he may be questioned and his statements used against him in a different criminal investigation. Spring, 479 U.S. at 574. Nor does the Constitution require the police to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Moran, 475 U.S. at 422. As long as a suspect's voluntary decision to speak to law enforcement officials is made with full awareness and comprehension of all the information Miranda requires the police to convey-i.e

., that he has the constitutionally-protected right to remain silent and to have an attorney present during custodial interrogation, and that whatever he chooses to say in response to police questioning may be used as evidence against him-his waiver is knowing and intelligent within the meaning of Miranda. See Spring, 479 U.S. at 574-75; see also Moran, 475 U.S. at 422-24.

On federal habeas corpus review of petitioner's state conviction, petitioner has the burden of proving that he did not competently and intelligently waive his constitutional rights. Johnson, 304 U.S. at 468-69 (involving waiver of right to assistance of counsel). Although the ultimate determination of a valid Miranda waiver is a mixed question of law and fact not subject to the presumption of correctness, Boggs v. Bair, 892 F.2d 1193, 1199 (4th Cir. 1989), *citing* Miller v. Fenton, 474 U.S. 104 (1985), the state court's factual findings supporting its waiver determination are presumed correct under 28 U.S.C. § 2254(e)(1). Moreover, in this federal habeas corpus proceeding, the state court's disposition of petitioner's Miranda claim will not be overturned unless it (1) was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or (2) was based on an unreasonable determination of the facts in light of the record evidence. 28 U.S.C. § 2254(d); Williams, 529 U.S. at 402-03.

Maybin has not offered any theory under which the confession might have been suppressed. Further, his voluntary guilty plea forecloses his attempts to attack non-jurisdictional defects which occurred prior to the entry of the plea. Tollett v. Henderson, 411 U.S. 258 (1973). Last, this claim is procedurally barred since it was addressed only on the basis of ineffective assistance of counsel by the PCR court.

## Conclusion

Based on a review of the record, it is recommended that Petitioner's motion for summary judgment be denied, respondent's motion for summary judgment be granted, and the petition dismissed without an evidentiary hearing.

                                    Respectfully submitted,

                                    Joseph R. McCrorey
                                    United States Magistrate Judge

February 4, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

11